UNITED STATES BANKRUPCTY COURT
DISTRICT OF NEW MEXICO

In re: CHERYL SHERMAN,　　　　　　　　　　　　No. 18-10752-j7

　　Debtor.

# MEMORANDUM OPINION AND ORDER DENYING
# DEBTOR'S MOTION TO RECONVERT TO CHAPTER 13

THIS MATTER is before the Court on the Debtor's Notice of Conversion of Bankruptcy Case from Chapter 7 to Chapter 13 ("Motion to Reconvert"). *See* Docket No. 153. Debtor seeks to reconvert her Chapter 7 case to Chapter 13 after previously converting her bankruptcy case from Chapter 13 to Chapter 7. Philip J. Montoya, Chapter 7 Trustee ("Chapter 7 Trustee") and Tiffany M. Cornejo, Chapter 13 Trustee ("Chapter 13 Trustee") object to the Motion to Reconvert.[1]

The Court held a final hearing on the Motion to Reconvert on May 23, 2019. Parties who appeared at the final hearing were noted on the record.[2] For the reasons explained below, the Court will deny the Motion to Reconvert. Even assuming that the Court has the discretion to allow a Debtor to convert from Chapter 7 to Chapter 13 after a prior conversion from Chapter 13 to Chapter 7, the Debtor has not met her burden of demonstrating that reconversion to Chapter 13 is appropriate under the circumstances.

---

[1] *See* Trustee's Objection to Debtor(s)' Notice of Conversion of Bankruptcy Case from Chapter 7 to Chapter 13 filed by the Chapter 13 Trustee – Docket No. 159; Trustee's Objection to Debtor's Notice of Conversion of Bankruptcy Case from Chapter 7 to Chapter 13 filed by the Chapter 7 Trustee – Docket No. 164. The Debtor filed a document titled Debtor's Notice of Conversion of Bankruptcy Case from Chapter 7 to Chapter 13 Exhibits [11 U.S.C. § 1307(a) – Docket No. 168, which appears to be a response to the Chapter 7 Trustee's objection to the Motion to Convert.

[2] The Chapter 13 Trustee was unable to appear at the final hearing due to a scheduling conflict, but supports the Chapter 7 Trustee's position opposing the Debtor's reconversion. *See* Trustee's Notice of Non-Appearance at Final Hearing on Motion to Re-Convert to Chapter 13 (Docket No. 169).

FACTS AND PROCECURAL HISTORY

Debtor originally filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code on March 28, 2018. *See* Docket No. 1. Approximately seven months later, on September 18, 2018, she converted her case to Chapter 7. *See* Docket No. 91.

While her case proceeded under Chapter 13, the Debtor filed three proposed Chapter 13 Plans. The Debtor's first Chapter 13 Plan filed May 15, 2018, proposed plan payments of $1,735.65 per month for sixty months. *See* Docket No. 28. Debtor's second Chapter 13 Plan filed June 14, 2018 proposed plan payments of $400.00 per month for thirty-six months. *See* Docket No. 48. Debtor's third Chapter 13 Plan filed June 20, 2018 proposed plan payments of $150.00 per month for thirty-six months, plus two back payments totaling $300.00. *See* Docket No. 51. Debtor did not confirm a Chapter 13 Plan and did not make any of the proposed plan payments. *See* Chapter 13 Standing Trustee's Final Report and Account – Docket No. 129.

Debtor's statements and schedules reflect that she owns certain real property located at 2109 Stanford Drive, Albuquerque, New Mexico (the "Stanford Property"), subject to a first and second mortgage. *See* Docket No. 26. The Stanford Property is the Debtor's principal residence. Schedule I reflects monthly income of $988.00, consisting of social security payments of $588.00, plus contributions from her mother of $400.00 per month. Schedule J does not reflect a mortgage expense. *Id.* Other than the mortgage debt, the Debtor has few other debts.[3] *Id.*

Wells Fargo Bank, National Association, as Trustee for Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2007-5 ("Wells Fargo/2007-5") filed a proof of claim asserting a claim in the amount of $179,966,81 secured by the Stanford Property. *See* Claim No. 3-1. The payment history attached to Wells Fargo/2007-5's proof of claim shows that

---

[3] The total of all the unsecured claims listed on Schedule E/F is $1,133.58. *Id.*

the regular monthly mortgage payment, without including the escrow amount for taxes and insurance, is $672.67, and that the Debtor has not made a regular monthly mortgage payment since June of 2011. *Id.* A stipulated *in rem* foreclosure judgment on the Stanford Property was entered against the Debtor pre-petition. *See* In Rem Stipulated and Default Judgment for Foreclosure and Order of Sale ("Foreclosure Judgment") – Exhibit A.[4] The Debtor has objected to Wells Fargo/2007-5's claim, asserting that the documents attached in support of its claim fail to show the complete chain of title evidencing ownership of the note and mortgage securing the loan. *See* Docket Nos. 49 and 103.

The Debtor admits that she has not made a mortgage payment since June of 2011 and has not made any post-petition mortgage payments. The Foreclosure Judgment states a balance of $153,328.46 as of December 4, 2017. The proof of claim filed by Wells Fargo/2007-5 reflects a pre-petition arrears of $92,953.55. *See* Claim No. 3-1. The current regular monthly mortgage payment on the first mortgage is approximately $911.00, which includes the regular fixed interest monthly mortgage payment of $672.67 plus the escrow payment for homeowners' insurance and property taxes. The current regular monthly mortgage payment on the second mortgage is $106.72.

Wells Fargo Bank, National Association, as Trustee for Lehman Mortgage Trust Mortgage Pass-Through Certificates, Series 2007-9 ("Wells Fargo/2007-9") filed a motion for relief from stay to exercise its right to foreclose its interest in the Stanford Property. *See* Motion for Relief from the Automatic Stay and for the Abandonment of Property by Wells Fargo Bank, National Association, as Trustee for Lehman Mortgage ("Stay Motion") – Docket No. 75. The Stay Motion asserted, among other things, that the Debtor failed to make four post-petition

---

[4] The judgment was entered in favor of Nationstar Mortgage, LLC on December 4, 2017. *Id.*

mortgage payments from April 1, 2018 through July 1, 2018. *Id.* Ultimately, Wells Fargo/2007-5 and the Debtor stipulated that the Stay Motion should be denied without prejudice because the Stay Motion was filed under the wrong creditor name. *See* Docket No. 146.

The Debtor testified at the final hearing on the Motion to Reconvert that she has several prospects that she intends to explore that will allow her to keep the Stanford Property. The Stanford Property has four bedrooms. The Debtor believes she would be able to rent two of those bedrooms for a minimum monthly rent of $500.00 per renter. She has not yet advertised or obtained any potential renters, but has a friend who is a real estate agent whom the Debtor plans to contact to assist her with renting the property. Her social security income has increased from $588.00 per month to $604.00 per month. She also intends to apply for supplemental social security income. The Debtor, who is an only child, also testified that she believes her mother would likely be able and willing to substantially increase the monthly contribution she gives to the Debtor. The Debtor's mother is retired and her home is paid off. Finally, the Debtor suggested that she may approach a family in her neighborhood who owns five other homes to see if they might be interested in purchasing her home, with some arrangement that would allow the Debtor to continue to live in the Stanford Property.

## DISCUSSION

Conversion of a bankruptcy case from Chapter 7 to Chapter 13 is governed by 11 U.S.C. § 706. Section 706(a) provides, in relevant part:

> The debtor may convert a case under this title to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title.

11 U.S.C. § 706(a). Some courts interpret the language of this Code section to preclude reconversion as a matter of law. *See, e.g., In re Muth*, 378 B.R. 302 (Bankr. D. Colo.

2007) (finding that § 706(a) provides a one-time statutory right to convert and concluding that a previous conversion prevents reconversion); *In re Baker,* 289 B.R. 764, 768 (Bankr. M.D. Ala. 2003) (Section 706(a) "bar[s] a Chapter 7 case which previously has been converted from later converting to . . . Chapter 13."); *In re Banks*, 252 B.R. 399, 403 (Bankr. E.D. Mich. 2000) (concluding based on the legislative history that Congress did not intend for the bankruptcy court to retain discretion to permit conversion to Chapter 13 if there has been a prior conversion from Chapter 13 to Chapter 7); *In re McLawhorn*, No. 13-00167-8-RDD, 2014 WL 4948120 (Bankr. E.D.N.C. 2014) (the clear and unambiguous language of § 706(a) provides a right to convert only if the case has not previously been converted).

Other courts conclude that the Court retains discretion to allow a debtor who has previously converted from Chapter 13 to Chapter 7 to reconvert the case to Chapter 13. *See, e.g., Povah v. Hansbury and Finn, Inc. (In re Povah)*, 455 B.R. 328, 341 (Bankr. D. Mass. 2011) (the court "has discretion to permit reconversion of the Debtor's case to a case under Chapter 13 in appropriate circumstances."); *In re Johnson,* 376 B.R. 763 (Bankr. D.N.M. 2007) (the bankruptcy court has discretion to allow a second conversion back to Chapter 13); *In re Anderson*, 354 B.R. 766, 769 (Bankr. D.S.C. 2006) ("The court has discretion to order a second conversion"); *In re Manouchehri*, 320 B.R. 880, 884 (Bankr. N.D. Ohio 2004) (the court has discretion under § 706(a) to consider whether the case should be reconverted). Some courts allowing discretionary reconversion reason that § 706(a) only addresses the debtor's statutory right to convert and does not expressly prohibit the bankruptcy court from exercising discretion to allow a second conversion. *See, e.g., In re Bange*, No. 08-40156-7C, 2010 WL 3829632, at *1 (Bankr. D. Kan. Sept.

23, 2010) ("§706(a) is phrased as a restriction on the debtor's ability to convert a case; it says nothing explicit about the court's authority to do so."); *Povah*, 455 B.R. at 341 (adopting the reasoning of *Bange*).

If reconversion is within the Court's discretion, in determining whether to exercise that discretion, the Court must carefully scrutinize the circumstances surrounding the debtor's request to reconvert to Chapter 13,[5] including the likelihood of a successful Chapter 13 reorganization,[6] the debtor's good faith,[7] and whether reconversion would cause delay prejudicial to creditors.[8] The debtor bears the burden of showing that reconversion is appropriate. *Johnson,* 376 B.R. at 764.

The Chapter 7 Trustee waived his argument that reconversion is impermissible under 11 U.S.C. § 706(a) based on the Debtor's prior conversion. Thus, the Court need not determine whether reconversion is impermissible as a matter of law to decide the Motion to Reconvert. Even if the Court assumes that it has discretion to allow the Debtor to reconvert her case to Chapter 13, reconversion is not appropriate under the circumstances.

Eligibility for Chapter 13 relief requires a debtor to have regular income. *See* 11 U.S.C. § 109(e) ("Only a debtor with regular income . . . may be a debtor under chapter

---

[5] *See Anderson*, 354 B.R. at 769 (the court "should scrutinize the debtor's circumstances . . . . and address each . . . motion on a case by case basis."); *In re Masterson*, 141 B.R. 84, 87 (Bankr. E.D. Pa. 1992) (allowing a second conversion requires the court to carefully scrutinize the debtor's circumstances).
[6] *Anderson,* 354 B.R. at 769 (in deciding whether to allow reconversion, the court should consider the debtor's "ability to succeed with the purposes for conversion."); *Povah* , 455 B.R. at 341 (reconversion requires the debtor to demonstrate "the feasibility of any plan of reorganization").
[7] *See Manouchehri,* 320 B.R. at 885-86 (denying debtor's motion to reconvert based on the debtor's lack of good faith); *Povah,* 455 B.R. at 341 (the debtor must establish that he or she is seeking reconversion in good faith).
[8] *See Johnson,* 376 B.R. at 765 (denying motion to reconvert where delay prejudicial to creditors indicated that the debtors had not proceeded in good faith); *In re Johnson*, 116 B.R. 224, 226 (Bankr. D. Idaho 1990) (a policy reason to disallow reconversion is "the obvious need to prevent the expense and delay occasioned by a debtor's unjustified repeated conversion attempts").

13 of this title."). Confirmation of a chapter 13 plan, among other things, requires the debtor to satisfy the feasibility requirements of 11 U.S.C. § 1325(a)(6). *See In re Lundahl*, 307 B.R. 233, 244 n. 38 (Bankr. D. Utah 2003) ("The Bankruptcy Code mandates the finding of feasibility in 11 U.S.C. § 1325(a)(6)."). In addition, a Chapter 13 debtor may not confirm a plan that modifies the rights of a secured creditor whose claim is secured only by a security interest in the debtor's principal residence. 11 U.S.C. § 1322(b)(2).

Debtor's schedules reflect that her monthly income is $988.00, comprised of social security payments and contributions from the Debtor's mother. Even if the contributions from the Debtor's mother are not regular, the social security component of the Debtor's income can constitute "regular income" under 11 U.S.C. § 109(e). *See In re Rigales*, 290 B.R. 401, 403 (Bankr. D.N.M. 2003) (social security payments can qualify as regular income within the meaning of § 109(e)) (citations omitted); *Lundahl*, 307 B.R. at 245 n. 39 ("Legislative history and case law amply support the proposition that individuals on welfare, social security, fixed pension income, or who live on investment incomes may qualify for Chapter 13.") (internal quotation marks and citation omitted). However, the Debtor has admitted that she is approximately eight years behind on her mortgage payments. Even though she has objected to Wells Fargo/Series-2005's claim, she will ultimately have to pay the rightful holder of the note and mortgage if she wants to keep the Stanford Property.

The Debtor's stated purpose for wanting to reconvert to Chapter 13 is to retain the Stanford Property. Other than the first and second mortgages on the Stanford Property, she has no other significant debts. The Debtor does not need a discharge because her

personal liability on the mortgages has already been discharged through a prior Chapter 7 bankruptcy case. *See* Case No. 09-10975-m7.

Assuming the pre-petition arrears on the first mortgage are at least $92,000, the Debtor would have to make payments of approximately $1,533.00 per month over a sixty month plan to cure the arrears.[9] The Debtor would also have to pay the ongoing mortgage payments of $911 per month. At a minimum, it appears that the Debtor would have to propose monthly plan payments of $2,444.00 just to address the pre-petition arrears and ongoing post-petition mortgage payments on the first mortgage.[10] Debtor's reported monthly income of approximately $988.00 is clearly insufficient to cure the mortgage arrears over the life of a Chapter 13 plan and make ongoing payments that become and become due post-petition.

If the Debtor were able to rent two rooms in the Stanford Property for $500 each, and get her mother to commit to contributing at least $1,500 per month, it may be possible for the Debtor to propose a feasible Chapter 13 plan. But based on the evidence currently before the Court, the prospect of a feasible plan is too speculative. There is no evidence of the Debtor's mother's willingness or ability to help fund the Debtor's Chapter 13 plan at that level. The Debtor has not yet obtained or even sought any willing renters for her property. In short, the Debtor has failed to prove by a preponderance of the evidence that she can propose a feasible plan to pay the amounts due under the mortgage. *See* 11 U.S.C. § 1325(a)(6) (confirmation requires a finding that "the debtor will be able to make all payments under the plan and to comply with the plan.").

---

[9] $92,000 ÷ 60 months = $1533
[10] $1533 + $911 (regular monthly mortgage payment) = $2,444

In deciding whether reconversion is appropriate, the Court will also take into account that denying the Motion to Reconvert will not necessarily preclude the Debtor from obtaining relief in another Chapter 13 case if she can (i) obtain the rental income and funds from her mother necessary to make a Chapter 13 plan feasible that pays her mortgages in the amounts required by the Bankruptcy Code and the Chapter 13's trustee's fees, and (ii) begin making payments proposed by the plan to the Chapter 13 trustee within 30 days after commencement of the Chapter 13 case as required by 11 U.S.C. § 1326(a)(1)(A).

If the Debtor attends the meeting of creditors in this Chapter 7 case and this Chapter 7 case is not dismissed,[11] and if stay relief is not granted with respect to the Stanford Property prior to a voluntary dismissal of her bankruptcy case, the Debtor will be eligible to file another Chapter 13 case to try to protect her home from foreclosure if the Chapter 13 case is filed after the chapter 7 case is closed but before a foreclosure sale of the Stanford Property.[12] However, based on the evidence now before the Court, the Debtor has not met her burden of showing that reconversion to Chapter 13 is appropriate.

Given the significant delays in this bankruptcy case while it was pending under Chapter 13, and the Debtor's failure to make any payments to the Chapter 13 trustee in

---

[11] Code section 109(g) makes an individual debtor ineligible to file a bankruptcy case if "the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." 11 U.S.C. § 109(g)(1).

[12] Code section 109(g) also makes an individual debtor ineligible to file a bankruptcy case if "the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title." 11 U.S.C. § 109(g)(2). In addition, Code section 362(c)(3), which limits the applicability of the automatic stay in a second bankruptcy case filed by an individual within a year, only applies where the prior case was dismissed. Although Code section 1328(f)(1) would prevent the Debtor from being granted a discharge in a Chapter 13 case filed within four years after a discharge is granted in the Debtor's chapter 7 case, *see* 11 U.S.C. § 1328(f)(1), that provision does not make the Debtor ineligible to file a Chapter 13 case; and the Debtor may if she wishes execute a written waiver of a chapter 7 discharge and ask the Court to approve it under 11 U.S.C. § 727(a)(1).

the amounts proposed by the plan or either of the two proposed amended plans, as required by Code § 1326(a)(1)(A), if the Debtor were to file another Chapter 13 case following the closing of this Chapter 7 case, the Court would expect the Debtor to (i) file a plan within 14 days of case commencement as required by Code § 1321 and Bankruptcy Rule 3015(b); (ii) file a plan that at least proposes to make payments on the first mortgage against the Stanford Property in an amount sufficient to cure the arrearage over a period not to exceed five years plus the amount necessary to keep post-petition ongoing payments current; and (iii) begin making payments to the Chapter 13 trustee in the amount proposed by the plan within 30 days after commencement of the bankruptcy case.[13]

## CONCLUSION

The Debtor has been in bankruptcy for over a year with little progress toward a successful resolution, either through confirmation of a Chapter 13 plan, or through the entry of a discharge in Chapter 7. Her testimony about possible options that will increase her monthly income to fund a feasible Chapter 13 plan are too speculative to allow reconversion. If the Debtor is able to increase her income enough to propose a feasible plan to cure the mortgage arrears and maintain the regular monthly mortgage payments, she could file another Chapter 13 plan after the conclusion of this Chapter 7 case if a foreclosure sale has not already occurred.

---

[13] If the Debtor were to contest who owns the first mortgage loan in a subsequently filed Chapter 13 case, the Debtor would still need to make the mortgage payments proposed by the Plan to the Chapter 13 for the Chapter 13 trustee to hold pending further order of the court.

WHEREFORE, IT IS HEREBY ORDERED that the Motion to Reconvert is DENIED.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: 5/24/2019

COPY TO:

Cheryl Louise Sherman
2109 Stanford Drive SE
Albuquerque, NM 87106

Tiffany M. Cornejo
Chapter 13 Trustee
625 Silver Avenue SW, Suite 350
Albuquerque, NM 87102-3111

Philip J. Montoya
Chapter 7 Trustee
1122 Central Ave SW Ste #3
Albuquerque, NM 87102